UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

WALTER TRIPP,

Petitioner,

v.

NEVADA STATE PAROLE BOARD, *et al.*,

Respondents.

Case No. 3:16-cv-00006-MMD-VPC

ORDER

This *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 7) comes before the Court for consideration on the merits. Respondents have answered the Petition (ECF No. 9), and Petitioner has replied (ECF No. 13). Following an order from this Court, Respondents filed a supplemental answer (ECF No. 24), and Petitioner filed a supplemental reply (ECF No. 26).[1]

**I.   FACTUAL BACKGROUND**

Petitioner, a state court prisoner who is serving three life sentences with eligibility for parole after five years, challenges the Nevada State Parole Board's ("Board") decision to deny him parole. (ECF No. 7.)

In 1991, Petitioner pleaded guilty to three counts of sexual assault on boys between the ages of seven and twelve. (ECF Nos. 10-1, 10-2, 10-3.[2]) Petitioner was sentenced in 1992 to three life sentences with eligibility for parole after five years; two

---

[1]The Court ordered the Respondents to file a supplemental reply, addressing Petitioner's *ex post facto* claim in Ground Four of the Petition.

[2]The state court record exhibits are located at ECF Nos. 10 & 25.

sentences ran concurrently while the third ran consecutively to the first two. (ECF No. 10-4.) Petitioner asserts that he received parole on the first two sentences after serving fourteen years. (ECF No. 7 at 4-5.) He has been denied parole on his current sentence several times, including in 2012, 2014, and 2016. (*See* ECF No. 10-5, ECF No. 10-7; ECF No. 13 at 2.) Petitioner submitted letters to the Nevada Board of Parole Commissioners seeking reconsideration of the 2012 and 2014 decisions, which requests were denied. (*See* ECF No. 7 at 23, 34-35.[3])

Petitioner filed a state habeas petition on February 19, 2015. (ECF No. 10-9.) The state court denied the petition on the grounds that Petitioner's claims were not cognizable on habeas review and on the independent ground that none had merit. (*See* ECF No. 10-12.) The Nevada Court of Appeals affirmed. (ECF No. 10-14 at 2-3.)

Petitioner dispatched the instant federal petition for writ of habeas corpus on December 31, 2015. (ECF No. 7 at 1.) Respondents have answered, arguing that the Petition is untimely and without merit.

## II.   TIMELINESS

In actions challenging a denial of parole, the limitations period for a § 2254 petition begins to run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *See Redd v. McGrath*, 343 F.3d 1077, 1084 (9th Cir. 2003). In this case, Petitioner learned of the factual predicate of his claim when he received notice that the Board was not considering his request for reconsideration of the decision to deny him parole.[4] It appears that Petitioner received notice of the Board's refusal to reconsider in or around mid-to-late November 2014. (*See* ECF No. 7 at 35 (letter indicating that the Board declined to consider Petitioner's letter request regarding the 2014 denial).)

---

[3] Citation is to the CM/ECF-generated number at the top of the page.

[4] It does not appear that the Petition raises any claims based solely on the 2012 denial of parole. However, to the extent it does, such claims are untimely. The record suggests that the limitations period as to the 2012 denial began to run in late January 2013. (*See* ECF No. 7 at 23 (letter dated January 14, 2013, denying request for rehearing after 2012 parole denial).)

2

The limitations period is tolled while "a properly filed application for State post-conviction or other collateral review" is pending. 28 U.S.C. § 2244(d)(2). Petitioner filed a state habeas petition on February 19, 2015, when no more than five months of the federal limitations period had elapsed, and proceedings remained pending on the petition until January 15, 2016, by which point Petitioner had filed the instant federal habeas petition.[5] Thus, if the state habeas petition constitutes a "properly filed application for State post-conviction or other collateral review," the Petition in this case is timely.

Respondents argue that the Petition was not "properly filed" because it stated no claims cognizable in a post-conviction petition for writ of habeas corpus pursuant to NRS § 34.724 and the state courts denied relief on that ground. (ECF No. 10-14.) Respondents argue that because the Petition did not comply with the requirements for a habeas petition under NRS § 34.724, it was not "properly filed."

A state petition is properly filed "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). Such rules typically include "the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee" and can include "preconditions imposed on particular abusive filers . . . or on all filers generally . . . ." *Id.* at 8-9. "[I]n common usage, the question whether an application has been 'properly filed' is quite separate from the question whether the claims contained in the application are meritorious and free of procedural bar." *Id.* at 9.

On the arguments and showing made, the Court is not persuaded that the Petition was not "properly filed." The state courts accepted and filed the petition and, in addition to denying it on the merits, also dismissed it as failing to state a claim for relief under NRS § 34.720. Stating a cognizable claim is more a condition for obtaining relief than it is a condition for filing. *See Ramirez v. Yates*, 571 F.3d 993, 999 (9th Cir. 2009) (holding that

---

[5]Although Respondents did not include the remittitur with the state court record, the Court takes judicial notice that remittitur was issued in Petitioner's state habeas appeal, Case No. 68121, on January 15, 2016. *See* http://caseinfo.nvsupremecourt.us/public/caseView.do?csIID=36329 (last visited July 2, 2018).

petition for writ of *coram nobis* was "properly filed" because state requirement that petitioner show due diligence was a condition to obtaining relief, not a condition to filing the petition). The Court therefore concludes that the state habeas petition was "properly filed," and thus the limitations period was tolled from February 19, 2015, when Petitioner filed his state habeas petition, until the time Petitioner filed the instant Petition. The Petition is not therefore untimely. It is, however, without merit.

### III.   MERITS

28 U.S.C. § 2254(d) provides the legal standards for this court's consideration of the merits of the Petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002). This court's ability to grant a writ is limited to cases where "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt").

4

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Andrade*, 538 U.S. 63 (first quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); then citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Andrade*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *E.g.*, *Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id.* The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." *Id.* at 973. Rather, AEDPA requires substantially more deference:

> [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

///

5

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181.

As the state courts reached the merits of most of Petitioner's claims, their decisions on those claims are entitled to deference under AEDPA and may not be disturbed unless they were ones "with which no fairminded jurist could agree." *Davis v. Ayala*, 135 S. Ct. 2187, 2208 (2015).

### A. Ground One

In Ground One, Petitioner asserts the Board violated his Fourteenth Amendment right to equal protection by denying him parole. (ECF No. 7 at 6.) Petitioner asserts that he has been denied parole solely because he is a sex offender and that other similarly situated prisoners who are not sex offenders are granted parole even when their prison records are worse than his. (*Id.*) Petitioner asserts that Board Chairwoman Connie Bisbee has a personal policy of discrimination against sex offenders and that this causes all the other board members to also discriminate against sex offenders. Finally, Petitioner asserts that the decision to deny him parole is arbitrary because he has done everything he needed to do under state law to get parole, including following the Board's recommendation that he get a "psych evaluation" at his own expense.[6]

The trial court rejected Petitioner's equal protection claims as follows:

> In grounds one and three Tripp alleges that his equal protection rights were violated. Tripp does not allege that he is a member of any protected class recognized under the Equal Protection Clause. Because Tripp does not allege that he is a member of a protected class or that his fundamental rights have been violated, he must prove that the Parole Board systematically and "intentionally treated him differently from others similarly situated and that

---

[6]Petitioner also asserts that he has a constitutional right to an unbiased parole board hearing and that the Board has denied him that right because he is a sex offender. Such a claim is not cognizable in habeas as an order directing Respondents to provide Petitioner with a fair and unbiased hearing would not necessarily lead to his speedier release. *See Nettles v. Grounds*, 830 F.3d 922, 935 (9th Cir. 2016) (holding that "[b]ecause success on [plaintiff's] claims would not necessarily lead to his immediate or earlier release from confinement, [plaintiff's] claim does not fall within 'the core of habeas corpus,' . . . and he must instead bring his claim under § 1983").

> there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). "In the absence of a large number of disadvantaged people sharing a single characteristic, 'there is no way to know whether the difference in treatment was occasioned by legitimate or illegitimate considerations without a comprehensive . . . canvassing of all possible relevant factors.'" *Nolan v. Thompson*, 521 F.3d 983, 990 (8th Cir. 2008) (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1213-14 (10th Cir. 2004)). "A class-of-one plaintiff must therefore provide a specific and detailed account of the nature of the preferred treatment of the favored class, especially when the state actors exercise broad discretion to balance a number of legitimate considerations." *Nolan*, 521 F.3d at 990 (8th Cir. 2008) (internal quotation marks omitted).
>
> Tripp has failed to provide any evidence to meet this high burden. First, he has presented no evidence of disparate treatment. Second, he has failed to prove that the board intentionally discriminated against him or denied him parole on an irrational basis. Instead, the board has stated that he was denied parole, among other reasons, because he had a prior conviction for a sexual offense, repetitive criminal conduct, his crime was targeted against a child or person at greater vulnerability because of age/disability, and his impact on the victim(s) and/or community. The Board has discretion to consider a wide range of individualized factors in making parole decisions. *See* NAC 213.512 to 213.518; *see also* NAC 213.560(2). In support of his equal protection claim, Tripp merely stated "other similarly situated prisoners, i.e., general population medium custody prisoners, are granted parole when their prison and criminal record show they are not a good risk for parole." This statement does not provide the requisite "comprehensive . . . canvassing of all possible relevant factors," nor does it "provide a specific and detailed account of the nature of the preferred treatment of the favored class." *Nolan*, 521 F.3d at 990.
>
> In ground 1 Tripp contends that the Parole Board violated his right to equal protection because the Chairman of the board has a "personal policy that causes undue discrimination against sex offenders" which other board members follow. However, Tripp has failed to present any evidence of such a "personal policy." To the extent Tripp complains about his decision to follow the recommendation of the Parole Board that he pass a psychological evaluation, "[a]ny recommendation provided to a prisoner pursuant to NRS 213.131 is not intended to create an expectation that the Board will grant parole to the prisoner if the prisoner follows the recommendations and does not create an interest in liberty or property when the Board considers the prisoner for parole at a subsequent history." NAC 213.536. As discussed above, Tripp has failed to demonstrate disparate treatment or show that there is no rational treatment and some legitimate government purpose. *See Cent. State Univ. v. Am. Ass'n of Univ. Professors*, 526 U.S. 124, 128 (1999). Ground 1 does not entitle Tripp to relief.

(ECF No. 10-12 at 4-6.) The Nevada Court of Appeals affirmed, holding that "Tripp's challenge to the denial of parole was without merit because parole is an act of grace of the State and there is no cause of action when parole has been denied. *See* NRS 213.10705; *Niergarth v. Warden*, 105 Nev. 26, 28, 768 P.2d 882, 883 (1989)." (ECF

///

No. 10-14 at 2-3.) The state courts' determination of this claim was not contrary to, or an unreasonable application of, clearly established federal law.

The Equal Protection Clause of the Fourteenth Amendment is essentially a direction that all similarly situated persons be treated equally under the law. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). In order to state an equal protection claim, Petitioner must allege facts demonstrating that Respondents acted with the intent and purpose to discriminate against him based upon membership in a protected class, or that Respondents purposefully treated him differently than similarly situated individuals without any rational basis for the disparate treatment. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Lee v. City of L.A.*, 250 F.3d 668, 686 (9th Cir. 2001).

Petitioner asserts that Respondents have denied him parole because he is a sex offender while other, non-sex-offender prisoners who have similar or worse prison records are granted parole. However, sex offenders are not a suspect or protected class under the Fourteenth Amendment. *United States v. Juvenile Male*, 670 F.3d 999, 1009 (9th Cir. 2012). Therefore, Petitioner must show that Respondents treat him differently than similarly situated individuals without any rational basis for the disparate treatment.

Petitioner proffers only conclusory allegations that other similarly situated prisoners have fared better than he in front of the Board and has not established that the Board's actions lacked a rational basis related to a legitimate governmental interest. He has thus failed to substantiate his equal protection claim.[7] In fact, "[g]iven the numerous factors considered by the Parole Board, it is unlikely that he can" show the Board has

///

---

[7]Respondents argue that a class-of-one equal protection claim cannot be sustained in the parole denial context under the reasoning of *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 602 (2008), because the decision to grant or deny parole is discretionary. The Ninth Circuit, in unpublished decisions, has applied the class of one theory in cases where the decision challenged is discretionary in nature. *See Smith v. Baca*, 716 F. App'x 702 (9th Cir. Mar. 27, 2018); *Tripp v. Bisbee*, 698 F. App'x 455 (9th Cir. 2017). The Court will therefore assume without deciding that such a claim is sustainable this context.

8

intentionally and irrationally treated him differently than it has treated similarly situated prisoners. *Siao-Pao v. Connolly*, 564 F. Supp. 2d 232, 245 (S.D.N.Y. 2008).

The fact that Petitioner followed the Board's recommendations by getting a "psych evaluation" does not render the Board's decision to deny him parole arbitrary or irrational, especially in light of Nevada law holding that such recommendations should not create an expectation that parole will be granted if they are followed. NAC § 213.536. The state courts' conclusion that Petitioner had failed to establish an equal protection violation is therefore not objectively unreasonable.

Petitioner is not entitled to relief on Ground One.

**B. Ground Two**

In Ground Two, Petitioner asserts that by denying him parole, Respondents have violated his right to be free of double jeopardy. (ECF No. 7 at 9.) Petitioner argues that the court that sentenced him never intended him to serve as long as he has, and the Board's refusal to consider granting parole thus violates double jeopardy.

In rejecting this claim, the trial court held:

> In ground 2, Tripp contends that the Parole Board violated his right to be free from double jeopardy because the "Parole Board uses a different guideline for parole eligibility than what the court has ordered." "The Double Jeopardy Clause protects against three abuses: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." *Jackson v. State*, 128 Nev. ___, ___, 291 P.3d 1274, 1278 (2012). No such allegations are made by Tripp in his petition and his belated allegation in his reply brief is conclusory at best. Therefore, this claim fails. To the extent Tripp contends that he is entitled to be paroled after he has served his minimum term of incarceration, parole is an "act of grace of the State" and "[n]o person has a right to parole" in Nevada. NRS 213.10705. There is no disparity in guidelines used by the Parole Board and Tripp has failed to present evidence to the contrary. Ground 2 does not entitle Tripp to relief.

(ECF No. 10-12 at 6.) The Nevada Court of Appeals affirmed, holding that "Tripp's challenge to the denial of parole was without merit because parole is an act of grace of the State and there is no cause of action when parole has been denied. *See* NRS 213.10705; *Niergarth v. Warden*, 105 Nev. 26, 28, 768 P.2d 882, 883 (1989)." (ECF No. 10-14 at 2-3.) The state courts' determination of this claim was not contrary to, or an

unreasonable application of, clearly established federal law, as the double jeopardy claim is entirely without merit.

The denial of parole in no way constitutes a violation of double jeopardy: it does not subject Petitioner to either "successive prosecutions for the same offense after acquittal or conviction" or "multiple criminal punishments for the same offense." *Monge v. California*, 524 U.S. 721, 727–28 (1998); *see also Guzman v. Morris*, 644 F.2d 1295, 1299 (9th Cir.1981); *Williams v. Finn*, 289 F. App'x 175, 176 (9th Cir. 2008); *Alessi v. Quinlan*, 711 F.2d 497, 501 (2d Cir. 1983) ("A denial of parole . . . . is neither the imposition nor the increase of a sentence, and it is not punishment for purposes of the Double Jeopardy Clause . . . ."). Petitioner was sentenced to life in prison by the trial court; the Board's decision not to release him does not impose any greater sentence than that imposed by the trial court.

As the state courts' rejection of this claim was not contrary to, or an unreasonable application of, clearly established federal law, Petitioner is not entitled to relief on Ground Two.

**C.    Ground Three**

In Ground Three, Petitioner asserts that Respondents violated his Fifth and Fourteenth Amendment rights to equal protection and due process when they denied him parole, particularly despite his completion of the benchmarks assigned to him by the Board at earlier denials of parole. (ECF No. 7 at 11.) Petitioner argues that the Board's reliance on Nevada regulations that allow it to consider the circumstance of his offense means the Board will be able to deny him parole forever, and that this amounts to a due process violation. (*Id.*) He asserts the Board's decisions are arbitrary.[8] (*Id.* at 12.)

As an initial matter, Petitioner's equal protection claim is duplicative of the claim asserted in Ground One. The Court will not discuss it further.

---

[8]Petitioner asserts that he realizes "he does not have a Right to Parole but he does have a Right to Fair, unbiased Hearing." (ECF No. 7 at 4.) As previously noted, this claim is not cognizable in habeas. *See Nettles*, 830 F.3d at 935.

10

In rejecting Petitioner's due process claim, the Nevada Court of Appeals held: "Tripp's challenge to the denial of parole was without merit because parole is an act of grace of the State and there is no cause of action when parole has been denied." (ECF No. 10-14 at 2-3.)

Under the Fourteenth Amendment, prisoners "may not be deprived of life, liberty, or property without due process of law." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). The guarantees of the Fourteenth Amendment apply only when a constitutionally protected life, liberty, or property interest is at stake. *See Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003); *Nunez v. City of L.A.*, 147 F.3d 867, 871 (9th Cir. 1998). Prisoners have "no constitutional or inherent right" to parole. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). While a state may create a liberty interest in parole, *Swarthout v. Cooke*, 562 U.S. 216, 220 (2011), Nevada has not, *see Moor v. Palmer*, 603 F.3d 658, 661 (9th Cir. 2010) ("Nevada's statutory parole scheme, however, expressly disclaims any intent to create a liberty interest."); *see also McCune v. Legrand*, 657 F. App'x 724, 725 (9th Cir. 2016); *Fernandez v. Jackson*, 667 F. App'x 954 (9th Cir. 2016) ("Nevada law does not create a liberty interest in parole."); *Tribble v. Gibbons*, 415 F. App'x 828, 829 (9th Cir. 2011) ("The district court properly dismissed Tribble's Fourteenth Amendment due process claim because Nevada law does not create a liberty interest in parole."). Petitioner is therefore not entitled to relief on his claim that the denial of parole violated his right to due process, and the state courts' rejection of this claim therefore was not objectively unreasonable.[9]

To the extent Petitioner argues that the Board's decision to deny him parole violates his due process rights because he completed the benchmarks he was told to complete, Nevada expressly provides that recommendations of the Board do not create

///

---

[9]Petitioner's reliance on *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010), and *Biggs v. Terhune*, 334 F.3d 910 (9th Cir. 2003), is unavailing. Both cases arose out of California, which has created a liberty interest in parole, as opposed to Nevada, which has not.

any liberty or property interest. NAC § 213.536. Thus, Petitioner's completion of the benchmarks recommended by the Board does not give rise to a due process claim.

Petitioner is not entitled to relief on Ground Three.

**D.     Ground Four**

In Ground Four, Petitioner asserts that Respondents violated his Fourteenth Amendment right to due process by having an arbitrary parole board. (ECF No. 7 at 14.) He asserts that the Board denies him parole based solely on his crime even though he has behaved exemplarily in prison. (*Id.*) For the same reasons as discussed in Ground Three, Petitioner is not entitled to relief on his due process claim under Ground Four.

Ground Four also asserts an *ex post facto* challenge on the grounds that the current parole guidelines were implemented in 2008—after Petitioner committed his crime—and under the new guidelines he is much less likely to get parole. Petitioner relies on *Garner v. Jones*, 529 U.S. 244, 250 (2000), which held that retroactive application of parole guidelines can violate *ex post facto* if it creates a "sufficient risk of increasing the measure of punishment attached to the covered crimes." Although Petitioner included this claim in his state habeas petition and appeal (ECF No. 10-9 at 15-16), the state courts did not directly address it. Nonetheless, Respondents persuasively argue that because the Nevada Court of Appeals held that it had "reviewed all documents Tripp has submitted in this matter, and [concluded] no relief based upon those submissions [wa]s warranted," the courts thereby rejected Petitioner's *ex post facto* claim on the merits. (ECF No. 10-14 at 3 n.2.) Accordingly, the Court applies AEDPA deference.

Petitioner asserts that at the time he committed his crime and entered his guilty plea, there were no guidelines or the guidelines were vague and ambiguous. He asserts that, as a result, he was much more likely to be granted parole under the old regime than under the current regime.

The parole guidelines in place since 2008 require the Board to assign a severity level and a risk level to each prisoner, referred to as the initial assessment. *See* NAC §§ 213.512 & 213.514. Depending on the combination of severity and risk levels, a chart

indicates whether the Board should either grant parole, deny parole, or consider the factors set forth in NAC § 213.518. *See id.* at § 213.516. Section 213.518 allows the Board to consider, among other things, any factor that indicates that the prisoner's release on parole would or would not be dangerous to society or the prisoner. *Id.* at §§ 213.518(2)(p) & (3)(m). And regardless of what the guidelines might otherwise suggest, the Board is free to deviate from the standards based on any factor it deems relevant. *Id.* at §§ 213.560(1) & (2). Thus, the Board has virtually unfettered discretion to grant or deny parole in any given case.

At the time Petitioner committed his crimes, in 1991, the guidelines contained fewer specific factors and did not have the initial assessment in present in the current guidelines. Nonetheless, the Board at that time had the discretion to grant or deny parole regardless of what the standards indicated.[10] (*See* ECF No. 25-1 (1990 version of NAC § 213.560).) The Board was authorized to deviate from the standards set forth in the guidelines on the basis of several enumerated factors and "[a]ny other circumstances the board deems appropriate." *Id.* at § 213.560. There is nothing in the guidelines as they existed in 1991 that would have mandated Petitioner's release on parole today.

The considerable discretion afforded to the Board, then and now, dictates denial of Petitioner's *ex post facto* claim. First, as a result of the Board's virtually unfettered discretion, the parole guidelines did not in 1991 and do not now have the force and effect of law. *See Flemming v. Or. Bd. of Parole*, 998 F.2d 721 (9th Cir. 1993). Second, and for the same reason, any contention that Petitioner is less likely to receive parole today than he would have been when he committed his crimes is "speculative and attenuated," and thus there is not a "sufficient risk" that the measure of Petitioner's punishment has been increased by the change in the parole guidelines—even assuming the parole guidelines

---

[10]The Court does not consider the 1990 Nevada Administrative Code to be a part of the "record," as it is simply the historical version of an administrative regulation that could have been accessed on a legal research web site, such as Westlaw, if the historical versions on the site had gone back that far. As it stands, neither Westlaw nor LexisNexis had the 1991 version of the NAC available, which is why the Court ordered Respondents to provide it.

13

carried the force of law. *Garner*, 529 U.S. at 251. Accordingly, Petitioner has not established any violation of *ex post facto* based on the changes to the parole guidelines.

Petitioner is therefore not entitled to relief on Ground Four.

### E.     Ground Five

In Ground Five, Petitioner asserts that his Fourteenth Amendment rights to due process and equal protection have been violated because the Board and the State of Nevada arbitrarily and improperly refuse to give good time, work time, and meritorious time credits to those serving life sentences, such as himself. (ECF No. 7 at 5, 16.) Petitioner argues that Nevada refuses to define "life," by which he means equating a life sentence with a specific number of years. Because a life sentence is not defined by a set number of years, there is no term from which any earned credits can be deducted.

In rejecting the due process component of this claim, the trial court, which issued that last reasoned decision on the claim, held as follows:

> In ground 5 Tripp contends that the Parole Board violated his right to due process because the state of Nevada failed to define what a sentence of life is so that he can use his earned credits against that term. "[T]he legislature did not intend good time credit to be applied to a sentence of life in prison." *Hunt v. Warden, Nevada State Prison*, 111 Nev. 1284, 1285, 903 P.2d 826, 827 (1995). Because Tripp was sentenced to a maximum term of life in prison, there is no date from which credits can be deducted. *See id.* Furthermore, Tripp does not have a liberty interest in any credits and, consequently, Tripp has no due process right that can be abrogated. *See Clyde v. Hargrave*, 770 F. Supp. 553, 557 (D. Nev. 1991) (explaining that because Nevada's credit statutes vest discretion in prison officials, "they create no due process liberty interest"). Finally, Tripp has not demonstrated that any earned credits were not applied to his life sentence. Ground 5 does not entitled Tripp to relief.

(ECF No. 10-12 at 7.)

As discussed above, due process is afforded only where the individual has a protectable liberty or property interest. It is true that "[b]ecause it is ordinarily a fixed, specific entitlement lost on the basis of misconduct, good time is a right to liberty, that is, release from prison, that can be taken from the prisoner only with due process of law." *Hayward v. Marshall*, 603 F.3d 546, 556 (9th Cir. 2010), *overruled on other grounds by Swarthout v. Cooke*, 562 U.S. 216 (2011). However, the Nevada legislature never

14

intended for good time credits to apply to those serving life sentences, and thus, in Nevada, there is no liberty interest in good time credits for those sentenced to life in prison. *See Hunt*, 903 P.2d at 827; *Witherow v. Farwell*, 383 F. App'x 688 (9th Cir. 2010) ("Witherow's due process rights were not violated because the state of Nevada has not created a liberty interest in the application of good time credits to a life sentence."). Furthermore, under NRS § 206.446, meritorious and work credits are discretionary with prison officials and thus there is not a protectible liberty or property interest in such credits. *See Clyde*, 770 F. Supp. at 557; *Cooper v. Sumner*, 672 F. Supp. 1361, 1367 (D. Nev. 1987). Because Petitioner has no liberty interest in earned credits, work or otherwise, his due process claim must fail. Nor does Nevada's choice to not afford good time credits to life prisoners violate Petitioner's due process rights. The trial court's rejection of the claim on the same grounds was therefore not contrary to, or an unreasonable application of, clearly established federal law.

As to the equal protection component of this claim, Petitioner does not identify any membership in a protected class, nor has he established that Respondents "purposefully treated him differently than similarly situated individuals without any rational basis for the disparate treatment." To the extent Petitioner measures his treatment as against prisoners who are not serving a life sentence, the state's refusal to allow life prisoners earned credits is hardly arbitrary or irrational.

Accordingly, Petitioner is not entitled to relief on Ground Five.[11]

## IV. CERTIFICATE OF APPEALABILITY

In order to proceed with an appeal, Petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a Petitioner must make "a substantial

---

[11]To the extent Petitioner has asserted that the Board and the state courts misapplied Nevada law, in this or any of the other grounds in his petition, such a claim is not cognizable in habeas. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)) ("'[F]ederal habeas corpus relief does not lie for errors of state law.'").

15

showing of the denial of a constitutional right" to warrant a certificate of appealability. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000); 28 U.S.C. § 2253(c)(2). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.* When the petitioner's claim is denied on procedural grounds, a certificate of appealability should issue if the petitioner shows: (1) "that jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right;" and (2) "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484-85.

This Court has considered the issues raised by Petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard. The Court will therefore deny Petitioner a certificate of appealability.

**V.     CONCLUSION**

It is therefore ordered that Petitioner's Petition for writ of habeas corpus (ECF No. 7) is denied on the merits, and this action is accordingly dismissed with prejudice.

It is further ordered that Petitioner's requests for discovery and an evidentiary hearing, included in his reply (ECF No. 13), are denied.

It is further ordered that Petitioner is denied a certificate of appealability as jurists of reason would not find the Court's disposition of the claims presented to be debateable or wrong, for the reasons stated herein.

///

///

///

///

///

The Clerk of the Court is instructed to enter judgment accordingly and close this case.

DATED THIS 2nd day of July 2018.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE